562 So.2d 74 (1990)
In the MATTER OF the Last WILL and Testament of Jones I. Wasson, Deceased and In the matter of the Last Will and Testament of Laura G. Wasson, Deceased.
William C. GALLASPY
v.
Sara F. Gallaspy, Executrix.
No. 07-CA-59148.
Supreme Court of Mississippi.
April 25, 1990.
*75 F. Marvin Morris, III, Morris & Sakalarios, Hattiesburg, Samuel S. Creel, Jr., Brandon, for appellant.
Frank D. Montague, Montague, Pittman & Schwartz, Hattiesburg, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BLASS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
William C. Gallaspy has appealed from the judgment of the Chancery Court of Forest County, Mississippi, holding that a joint will instrument dated February 21, 1984, purportedly executed by Jones I. Wasson and Laura G. Wasson, husband and wife, was their true and accurate Last Will and Testament, dismissing the contest of William C. Gallaspy to said will instrument, and ratifying and confirming the decrees admitting said instrument to probate. He assigned the following errors in the trial below:
I. THE LOWER COURT WAS MANIFESTLY ERRONEOUS IN FINDING THAT JONES I. WASSON HAD THE NECESSARY MENTAL CAPACITY TO MAKE A VALID WILL, AND THAT HE WAS CAPABLE OF DISPOSING OF HIS PROPERTY, KNOWING THE MANNER OF ITS DISTRIBUTION AND THE OBJECTS OF HIS BOUNTY.
II. THE LOWER COURT WAS MANIFESTLY ERRONEOUS IN FAILING TO FIND THE EXISTENCE OF A CONFIDENTIAL OR FIDUCIARY RELATIONSHIP BETWEEN SARA F. GALLASPY, ATTORNEY-EXECUTRIX, AND THE TESTATOR AND TESTATRIX, AND IN ITS FAILING TO HOLD THAT A PRESUMPTION OF UNDUE INFLUENCE AROSE THEREFROM.
III. THE LOWER COURT WAS MANIFESTLY ERRONEOUS IN FINDING THAT ANY PRESUMPTION ARISING FROM A FIDUCIARY RELATIONSHIP BETWEEN SARA F. GALLASPY, ATTORNEY-EXECUTRIX, AND THE TESTATOR AND TESTATRIX HAD BEEN OVERCOME BY CLEAR AND CONVINCING EVIDENCE.

FACTS
Jones I. Wasson and Laura G. Wasson moved from New Jersey to Hattiesburg when Mr. Wasson retired from Exxon where he had worked as a chemist. The Wassons, who had no children of their own, established and maintained a close relationship with Mrs. Wasson's younger (by 25 years) brother Joe D. Gallaspy, his wife, Sara, and family. Both Joe and Sara were attorneys and were helpful to the Wassons in some aspects of the management of their investments and other business and in the day-to-day management of the household. The Wassons were, however, very private people who never disclosed their entire financial condition even though they had accumulated a sizable estate.
Mr. Wasson was an intelligent, quiet, reserved man who enjoyed gardening in his retirement and who rarely left home "except *76 to go to church or maybe to the shopping center." While Mr. Wasson was introverted, he was also an independent man who "would speak up when necessary" and who was not susceptible to the influence of others. He was in apparent good health and exhibited no mental confusion prior to his last illness.
Laura G. Wasson was a well-educated, highly intelligent, strong-willed, candid, inflexible, frugal woman who might have sought the advice of others but who "followed [her] own dictates."
In 1978, the Wassons executed a joint will in which they named Joe D. Gallaspy as Executor and Sara F. Gallaspy as Executrix in the event that Joe could or would not serve. In that will, they provided that on the death of one of them, the survivor would take all property owned by either of them. After some small bequests of personal property, they made specific bequests of $5,000 each to four churches and one college; and two bequests of $500 each. The rest and residue was to be distributed as follows: sixteen and two-thirds percent to Joe D. Gallaspy; eight and one-third percent to Gladys F. Gallaspy and if Joe and Gladys should not survive them, to their issue per stirpes; eight and one-third percent to Carolyn Gallaspy Yelverton and Glenn T. Gallaspy, Jr. (equally); sixteen and two-thirds percent to Allene Gallaspy Blair; thirty percent to Thelma Wasson Owen; and twenty percent to Hazel Wasson Gilliland[1]. The contestant to the present will, William D. Gallaspy, was not named as a beneficiary.
In 1971, the Wassons had executed general powers of attorney naming Joe and Sara Gallaspy as their attorneys in fact. Until his death in 1983, Joe, who was Chief of the Estate Tax Division of the Mississippi Tax Commission, was involved in tending to some of the Wassons' investments. On the day of Joe's funeral, Laura Wasson asked if Sara Gallaspy would tend to her investments. Sara Gallaspy suggested that Laura get help from Sara's son, David, who held a degree in banking and finance from the University of Southern Mississippi. Sara Gallaspy's testimony of the events of that day addressed her inability to assist at the time: "I was certainly emotionally devastated and I couldn't even think of her stock being important to me that day, and just told her she'd have to get David, and she was very fond of David and trusted David, and I told her she'd just have to rely on him to help for the time."
After Joe's death, the Gallaspy's son, David, was given a general power of attorney which he exercised in dealing with investments. He handled some certificates of deposit and later, after Mrs. Wasson broke her hip, paid some of her bills, made her bank deposits, and kept records on other investments. Sara Gallaspy was much more involved in direct care  she helped the Wassons find and interview domestic employees, cashed checks for the domestic employees to use in purchasing groceries and medicine etc. for the Wassons, took the Wassons for medical appointments, and took them shopping. The nature and frequency help. Despite the fact the Wassons were both legally blind, they continued to be able to pay some of their bills and to keep up with their business. After Laura Wasson broke her hip, she was even more restricted in her activities and more in need of the day-to-day help which Sara provided. Sara never exercised her power of attorney except to sign for hospital or nursing home admissions. Sara never knew the nature and extent of the Wasson's financial holdings. Sara did not prepare the powers of attorney nor did she know by whom they were prepared.
At some point after Joe's death, Laura Wasson asked Sara to update the joint will. Two of Laura Wasson's brothers who had been in the prior will had died and she wanted to change her will to increase her bequests to the churches and college. Sara suggested that Laura have someone in her church change the will but Laura wanted Sara to do it. Laura gave Sara the 1978 will along with some handwritten directions and newspaper clippings. Sara changed the 1978 will in accordance with Laura's instructions with one notable exception. *77 Laura instructed her that the bequest to Joe be changed to be equally divided among Sara and two sons, Jody and David. Sara took herself out of that bequest.
The 1984 will as finally drafted devised $10,000 each to the same four churches and one college named in the 1978 will, and made two $500 bequests, with the residue designated in twenty percent shares to the following: 1) Thelma Wasson Owen, 2) Hazel Wasson Gilliland, 3) Allene G. Blair, 4) the surviving issue of Joe D. Gallaspy, David and Jody, 5) the surviving issue of Glenn T. Gallaspy, Gladys F. Gallaspy, Carolyn Yelverton, Glenn T. Gallaspy, Jr. As in the 1978 will, the contestant, Laura's nephew, William Gallaspy, and his siblings, were not named as beneficiaries under the updated will. Sara F. Gallaspy was named in the 1984 will as Executrix with her son, David, as alternate Executor. In updating the will, Sara did not question the Wassons about the changes, render legal advice regarding the will, or charge a fee for the revision. Sara was not present when the will was executed at a local financial institution.
Jones Wasson died one year and three months after the will was executed and Laura Wasson died almost two years after the execution of the will. The wills were admitted to probate and in 1986, the contestant, William C. Gallaspy, filed an objection to probate in both estates.

LAW
The contestant/appellant contends: 1) that the lower court erred in finding that Jones I. Wasson had the necessary mental capacity to make a valid will; 2) that the lower court was manifestly in error when it failed to find the existence of a confidential or fiduciary relationship between Sara F. Gallaspy and the testator/testatrix and in failing to hold that a presumption of undue influence arose; and 3) the lower court manifestly erred in finding that any presumption arising from a fiduciary relationship had been overcome by clear and convincing evidence. These contentions will be combined for discussion.
Testamentary capacity requires that the testator/testatrix have the ability to understand and appreciate the nature and effect of his/her act. Such capacity requires that the testator/testatrix recognize the natural objects of his/her bounty and their relation to him/her and that they be able to determine what disposition they desire to make of their property. The capacity to make a valid will is tested as of the date of the execution of the will. Matter of Estate of Edwards, 520 So.2d 1370, 1372 (Miss. 1988).
In the case sub judice, the proponent of the will made a prima facie case of testamentary capacity by placing into evidence the wills of both decedents, the affidavits of subscribing witnesses to both wills, and the judgment admitting both wills to probate. The only evidence offered at trial by the contestant was the testimony of Sara F. Gallaspy, who was called as an adverse witness. There was nothing in her testimony to indicate that Mr. Wasson lacked testamentary capacity.
Dr. Gerald Gable testified that he did not see Mr. Wasson in 1984 and, therefore, could not venture an opinion as to his mental competency in 1984. When Dr. Gable saw Mr. Wasson in 1982, he was mentally competent. The doctor saw Mr. Wasson in March 1985, and, at that time, Mr. Wasson was rational.
At the conclusion of the trial, the chancellor, sitting without a jury, made the following findings of fact and conclusions of law:
On February 21, 1984, Jones I. Wasson and Laura G. Wasson duly signed, published, declared and executed their Last Will and Testament, in the presence of two disinterested witnesses and in conformity to the legal requirements, as reflected by the Affidavits of said witnesses, offered and heretofore admitted for probate in the above causes. Said Will was properly and lawfully witnessed and validly received for probate by Orders entered in these causes.
At the time of their execution of said Will, the said Jones I. Wasson and Laura G. Wasson had the necessary mental capacity *78 and were each of sound and disposing mind and memory and able to know and understand the business in which they were engaged. They were capable of disposing of their property, knowing the manner of its distribution and the objects of their respective bounties.
Neither Jones I. Wasson nor Laura G. Wasson were unduly or improperly influenced by Sara F. Gallaspy, an attorney at law, who is the mother of two of the beneficiaries, and the widow of the pre-deceasing brother of Laura G. Wasson, Joe D. Gallaspy. Sara F. Gallaspy did not procure the Will or undertake or attempt to assert dominance over, or influence the mind of, either the testator or testatrix as to the contents of the Will or against the Petitioner. Rather, the evidence reflects that the testatrix, Laura G. Wasson, was outspoken in her adverse views of the named objector and that the subject Will and the prior Will of the testator and testatrix were consistent with such views.
The testimony of disinterested witnesses and a review of Laura Wasson's investment portfolio, banking and other records of the testatrix, including her notes and memoranda and magazine and related clippings delivered to Sara G. Gallaspy proceding preparation of the subject Last Will and Testament clearly and convincingly demonstrate, with other testimony and evidence, that said Last Will and Testament truly and correctly reflects the testamentary intent of the decedents, intelligent, private people, who consulted sources of their selection and were frugal in their expenditures. The Testatrix, Laura G. Wasson, was not dependent on anyone, except in limited respects, and Sara F. Gallaspy, as preparer of said Will, did not use or abuse her relationship with either the testator or testatrix in any unlawful or unprofessional manner.
If a fiduciary relationship existed between Sara F. Gallaspy and the Wassons, any presumption arising therefrom has been overcome by clear and convincing evidence.
The chancellor amended the above findings and made supplemental findings of fact:
1) Sara Gallaspy was never "hired" as an attorney to prepare the subject Will, but did so at the request of the Testators, and as a friend and a family member (by marriage). Therefore, a true attorney-client relationship was never created.
2) Sara Gallaspy did not prepare an entirely new Will for the Testators but merely updated their prior 1978 Will to increase the amounts of specific bequests, to substitute her two sons as legatees in place of their deceased father and to change the designated Executor. Only to this extent, did Sara Gallaspy prepare the Joint Will of Jones I. Wasson and Laura G. Wasson.
3) Paragraph 8 of the Court's Findings and Judgment dated September 21, 1987, found that any fiduciary relationship existing between Sara Gallaspy and the Testators and the presumption arising therefrom have been overcome by clear and convincing evidence. That and all other findings and adjudications in said Judgment of September 21, 1987, are incorporated by reference herein.
This Court said in Matter of Will of Adams, 529 So.2d 611, 615 (Miss. 1988):
A presumption of undue influence is not raised merely because a beneficiary occupies a confidential relationship with the testator; something more is required, such as active participation by the beneficiary in the procurement, preparation or execution of the will or mental infirmity of the testator. Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959).
In other words, there must be some showing that [the beneficiary] abused the relationship either by asserting dominance over the testator or by substituting her intent for that of [the testator].
Matter of Will of Adams, 529 So.2d 611, 615 (Miss. 1988).
*79 This Court has said that undue influence is the substitution of the will and intent of the beneficiary for that of the testator:
The "polestar consideration" in our review of a will contest it to give effect to the intent of the testator. Tinnin v. First Bank of Mississippi, 502 So.2d 659 (Miss. 1987); Deposit Guaranty National Bank v. First National Bank of Jackson, 352 So.2d 1324 (Miss. 1977); In re Estate of Granberry, 310 So.2d 708, 711 (Miss. 1975). ("When the intent of the testator has been ... ascertained, all minor, subordinate and technical rules of construction must yield to the paramount intent thus ascertained.") The effect of a charge of undue influence is to suggest that the will reflects the intent of the beneficiary and not of the testator. "Undue influence in the matter of executing a will must be the substitution of another's will for the will of the testator." Barnett v. Barnett, 155 Miss. 449, 457, 124 So. 498, 500 (1929)... .
The cases in which we have recognized the presumption of undue influence present factual scenarios where there was more than just a legal or domestic relationship between the testator and the beneficiary. There must also be an abuse of that relationship relating to the execution of the will.
* * * * * *
Furthermore, even when a confidential relationship can be said to exist between the parties, ... the beneficiary under the will must have used that relationship for his personal gain or to thwart the intent of testator.
Costello v. Hall, 506 So.2d 293, 297-98 (Miss. 1987) (Emphasis in original).
Although the chancellor did not make an express finding that a confidential relationship existed between Sara F. Gallaspy, the executrix, and the Wassons, he heard the evidence and made the findings of fact, which overcame a finding of confidential relationship, i.e., "that any fiduciary relationship existing between Sara F. Gallaspy and the testators and the presumption arising therefrom have been overcome by clear and convincing evidence".
After the death of her husband, Mrs. Wasson desired to update her will and include as beneficiaries some persons who were the heirs of former beneficiaries of the will, who had died. Sara F. Gallaspy refused to let herself be included in the will.
After a thorough consideration of the record in this case and the law applicable to the facts, we are of the opinion that the finding of the chancellor, that if a fiduciary relationship existed between Sara F. Gallaspy and the Wassons, any presumption arising therefrom has been overcome by clear and convincing evidence, is not erroneous but, on the other hand, is amply supported by the evidence. Therefore, the judgment of the lower must be, and is, affirmed.
AFFIRMED.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., not participating.
NOTES
[1] The Wassons' estate was divided one-half to each of their families.