KING, P.J.,
for the Court:
¶ 1. Willie L. Coleman died on March 10, 1995. On October 11, 1995 and October 17, 1995, respectively, Sandra Faye MeVey and Margaret Galle filed separate petitions to probate Coleman’s estate in the Jackson County Chancery Court. MeVey sought to probate Coleman’s will dated March 29, 1994. Galle sought to probate Coleman’s will dated December 12, 1977. On January 16, 1996, the petitions were consolidated for hearing
f 2. In his order dated May 14, 1997, the chancellor found that the March 29, 1994 will should be admitted for probate. Mrs. Galle has appealed from that ruling and assigned the following issues as error:
1. It was error for the trial court to hold that in order to create a presumption of undue influence, one must prove both the existence of a confidential relationship and an abuse of the relationship.
2. Assuming the trial court was correct in that something more than just a confidential relationship is required to create a presumption of undue influence, appellant proved something more.
3. It was error for the trial court, in determining the existence of undue influence, to focus solely upon the events and circumstances surrounding the execution of the March 1994 will and not consider the events and circumstances surrounding the execution of the August 1993 will.
4. It was error for the trial court to determine that the evidence in this case was sufficient to clearly and convincingly rebut a presumption of undue influence.
Finding no reversible error, this Court affirms.

Facts

¶ 3. Coleman’s husband died in November 1977. She had no children. At the time of her death her natural heirs were her five brothers: James Galle, Thomas Galle, Robert Galle, Andrew Galle, and Hart Galle. Between 1977 and 1994, Coleman executed at least five wills [1]
¶4. In the 1977 will, Coleman left the entirety of her estate to her brother, Andrew Galle, and sister-in-law, the appellant, Margaret Galle.
¶ 5. In the 1981 will, Coleman specifically excluded all of her family members and left the entirety of her estate to non-relatives.
¶ 6. In the 1984 will, Coleman specifically excluded all of her family members, *775 except her brother, Andrew Galle, and her sister-in-law, Margaret Galle. She left the entirety of her estate to Andrew and Margaret, less 4.4 acres which she devised to a non-relative.
¶ 7. In the 1993 will, Coleman specifically excluded all of her family members except her brother, Andrew Galle, and her sister-in-law, Margaret Galle. In this will, Coleman bequeathed Andrew and Margaret Galle each $10,000 and left the remainder of her estate to the appellee, Sandra Faye McVey.
¶ 8. In the 1994 will, Coleman excluded all of her family members and left the entirety of her estate to Sandra McVey and her husband Melvin McVey.
¶ 9. Coleman worked as a nurse for approximately twenty years before she was diagnosed with epilepsy, which necessitated her early retirement. In addition to suffering from epilepsy, Coleman suffered from various other health problems. Coleman was highly dependent upon her husband as her primary care giver.
¶ 10. After the death of her husband Gus, Coleman suffered from severe depression. Andrew and Margaret Galle began to take on more active roles in Coleman’s life. She was very fond of Andrew Galle. Subsequently, she became very dependent upon the Galles. They transported her to doctor’s appointments, took care of her grocery shopping and other business matters.
¶ 11. Sometime in 1978, Coleman began to withdraw from the Galles. This withdrawal resulted in the Galles not seeing Coleman for a period of three and one-half years. However, the separation ended sometime in 1981 when Coleman contacted the Galles from her hospital room desperate for their help.
¶ 12. Coleman informed the Galles that the doctors at Keesler Air Force Base wanted to move her to a home. The doctors’s action was prompted by the discovery of Coleman’s abuse of drugs prescribed to control her epileptic seizures.
¶ 13. Upon recovering from her addiction to prescription drugs, Coleman seemed to once again enjoy life. She visited with the Galles, often spending holidays and special occasions in their home.
¶ 14. In December 1992, Coleman showed the Galles a Christmas card which she received from Sandra McVey. Sandra McVey was Coleman’s neighbor. The message on the card indicated that it was one from a daughter to her mother and McVey signed “Your daughter, Sandy”. The Galles thought the card was strange; Coleman thought it was “cute.”
¶ 15. In January 1993, Andrew Galle died. Andrew’s death devastated Coleman. Coleman began to distance herself from Galle and to identify more with McVey. Ultimately, Coleman stopped answering Galle’s telephone calls and would not open the door when Galle would visit.
¶ 16. After this situation persisted, Margaret Galle telephoned Sandra McVey at her place of employment to express concern that Coleman was not answering telephone calls or the door. Sandra McVey responded that Coleman was just in a bad mood and assured her that Coleman was fine. Margaret Galle’s son, Steven, testified that he also visited Coleman every few weeks but his knocks also went unanswered. Steven Galle, eventually, ceased making regular visits to Coleman’s home.
¶ 17. Sandra McVey testified that at the time of Coleman’s death, Coleman was entirely dependent upon her to provide meals, handle her financial matters, and other necessities of day-to-day living. In the latter part of Coleman’s life, McVey was listed as Coleman’s daughter on various hospital records. During her final stay in the intensive care unit, other members of Coleman’s family were not allowed in to visit with her because McVey was listed as next-of-kin. ■

*776
Discussion

I. DID THE TRIAL COURT ERR IN HOLDING THAT APPELLANT MUST PROVE THE EXISTENCE OF A CONFIDENTIAL RELATIONSHIP AND AN ABUSE OF THAT RELATIONSHIP.
II. ASSUMING THAT THE TRIAL COURT WAS CORRECT IN HOLDING THAT THE APPELLANT MUST PROVE THE EXISTENCE OF A CONFIDENTIAL RELATIONSHIP AND AN ABUSE OF THAT RELATIONSHIP, DID THE APPELLANT MEET THAT STANDARD OF PROOF?
¶ 18. The appellant argues that the trial court committed reversible error in requiring her to prove an abuse of the confidential relationship before the presumption of undue influence arises. Galle contends that the presumption of undue influence should arise from the existence of a confidential relationship alone “because the requirement of proving ‘something more’ frustrates the purpose for which the doctrine was created in the first place.”
¶ 19. “Where there is a relationship between two people in which one person is in a position to exercise dominant influence upon the other because of the latter’s dependency upon the former, arising either from weakness of the mind of body or through trust, the law does not hesitate to characterize such a relationship as fiduciary in character.” Madden v. Rhodes, 626 So.2d 608, 617 (Miss.1993).
¶ 20. In the months preceding her death, Coleman relied on McVey to prepare all of her meals and to handle all of her financial matters. Under Madden, it is clear that a confidential relationship existed between Coleman and McVey. But, “[t]he existence of a confidential relationship standing alone, does not give rise to a presumption of undue influence.” Matter of Estate of Grantham, 609 So.2d 1220, 1224 (Miss.1992).
¶ 21. A presumption of undue influence arises in a will contest when a beneficiary, by virtue of the existence of a confidential relationship, actively participates with the testator in the procurement and or preparation of the will. In Re Last Will and Testament of Smith, 722 So.2d 606, 611 (Miss.1998) (citing Matter of Adams, 529 So.2d 611, 615 (Miss.1988)). Matter of Will of Fankboner, 638 So.2d 493, 495 (Miss.1994).
¶ 22. The record failed to establish that the McVeys actively participated in the procurement of the March 1994 will. The testimony established that the McVeys (1) were unaware that Coleman had contacted her attorney to prepare this will, (2) were unaware of how and when Coleman went to see her attorney, and (3) were not present, or even nearby, when the will was discussed and executed.
¶ 23. The chancellor correctly found that a confidential relationship existed between Coleman and McVey. Notwithstanding this finding, the court ruled that McVey had not abused that relationship, stating:
The Court finds that there was no abuse of the confidential relationship by Sandra Faye McVey, or even her husband, in the procurement, preparation, or execution of the March 29, 1994, Will. No evidence was offered as to any abuse of the relationship. All evidence tends to rebut any presumption of abuse in the procurement, preparation, and execution of the March 29,1994, Will.
¶ 24. The chancellor did not err in finding that (1) Galle failed to show that a presumption of undue influence had arisen and, (2) had a presumption of undue influence been established, that the McVeys rebutted that presumption by clear and convincing evidence.
III.DID, THE TRIAL COURT ERR IN ONLY CONSIDERING THE CIRCUMSTANCES SURROUNDING THE EXECUTION OF THE 1994 WILL?
¶ 25. Galle failed to support this point of error with legal authority and we, therefore, decline to give it consideration. Thi *777 bodeaux v. State, 652 So.2d 153, 155 (Miss.1995).
IV. DID THE TRIAL COURT ERR IN FINDING THAT THE APPELLEE REBUTTED THE PRESUMPTION OF UNDUE INFLUENCE BY CLEAR AND CONVINCING EVIDENCE?
¶26. This issue was disposed of in Issues I and II.
¶ 27. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, and THOMAS, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.

. Of those five wills, four where drafted by the same attorney, Oscar Jordan. The 1977 will was drafted by the Keesler Air Force Base legal department.