790 So.2d 850 (2001)
In the Matter of the ESTATE OF Charles Donald SANDLIN, Deceased: Charles Daniel Sandlin and Dale Osman Malone, Appellants,
v.
Donald Wayne SANDLIN, Individually and As Trustee for the Benefit of Charles Michael Sandlin, A Minor, Charles Michael Sandlin and Patricia Ann Allen Sircy, Appellees.
No. 2000-CA-00321-COA.
Court of Appeals of Mississippi.
February 13, 2001.
Rehearing Denied April 24, 2001.
Certiorari Denied July 26, 2001.
*852 Charles E. Webster, Clarksdale, Attorney for Appellant.
Jerry P. `Jay' Hughes Jr., Oxford, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. This is the contest of the 1998 will and a 1998 life insurance designation card of Charles Donald Sandlin (Mr. Sandlin), natural father of Donald Wayne Sandlin (Donald) and Charles Daniel Sandlin (Dan) and step-father to Dale Osman Malone (Dale) and Patricia Ann Allan Sircy (Patricia). After Mr. Sandlin's death in 1998 two wills were presented for probate. One from 1995 offered by Dan and Dale and the other dated September 12, 1998 offered by Donald. Also in dispute is Mr. Sandlin's beneficiary card for his employment death benefits. Two of those were presented as well, one from 1994 and one from 1998. Following a two day trial in the Chancery Court of Lafayette County, Honorable Norman Gillespie presiding, the court upheld the 1998 will and beneficiary card to be valid.
¶ 2. Dan Sandlin and Dale Malone now appeal to this Court for review. The question presented is whether the evidence presented by the appellee, Donald Sandlin, overcame the presumption of undue influence raised by virtue of the confidential relationship existing between the appellee and the testator. After a thorough review of the record and applicable case law, we affirm the decision of the trial court.

FACTS
¶ 3. After his divorce Donald and his minor son went to live with Mr. and Mrs. Sandlin in 1995. Soon thereafter, Mrs. Sandlin died. Mr. Sandlin had been diagnosed with cardio obstructive lung disease or cardio obstructive pulmonary disease (COPD) in 1983. The normal progression of an individual with COPD is a gradual decline in lung function which deprives the brain of oxygen by increasing the amount of carbon dioxide in the blood stream. The increased carbon dioxide destroys parts of the brain until the affected individual dies. Dan is asserting that this disease was at such a stage in 1998 that it deprived Mr. Sandlin the abilities to properly function both mentally and physically.
¶ 4. After the death of Mrs. Sandlin, Donald eventually became Mr. Sandlin's primary care giver. The care given Mr. Sandlin by his son Donald included cooking meals, providing transportation, assisting with his father's medications, purchasing groceries and supplies for the home and helping clean his father when Mr. Sandlin soiled himself. In October 1998, Mr. Sandlin passed away.
¶ 5. Donald submitted for probate a will dated September 1998 in which he and his son were the main beneficiaries. This will all but excluded the other three children. Prior to September 1998 both Donald and Dan were named as beneficiaries of their father's employment death benefits and all four children were included in the will of Mr. Sandlin. Dan and Dale dispute the 1998 will and offer a 1995 will to probate. This will designated Donald, Dan, Dale and Patricia as his children for the purposes of the will. It devised that all Mr. Sandlin's remaining assets be divided equally between Donald, Dan, Dale and Patricia. After the new will and the new beneficiary card were issued, the benefits *853 went exclusively to Donald and the will devising Mr. Sandlin's estate to Donald's son, Charles Michael Sandlin, save one antique desk which was left to Dan. The following time line illustrates the important dates.
1994 5/26 Dan was named sole beneficiary of his fathers employment death benefits.
1995 Dan drafted a will for his father dividing the estate equally among the four
 people Mr. Sandlin considered his children.
 Donald and his handicapped child came to live with Mr. and Mrs. Sandlin after
 Donald's divorce.
1997 2/10 Mr. Sandlin executed a beneficiary card naming both Donald and Dan as the
 beneficiaries of his employment death benefits.
1998 9/12 Mr. Sandlin executed a general power of attorney in favor of Donald and a
 form will filled out by Donald leaving all of the estate to the grandson save
 one antique desk which was left to Dan
 9/29 Mr. Sandlin executed a new beneficiary card naming Donald as the sole
 beneficiary.
 10/13 Mr. Sandlin conveys his residence to Donald W. Sandlin, trustee for the
 benefit of Charles Michael Sandlin, a minor by quitclaim deed.
 10/22 Mr. Sandlin died.

DISCUSSION
¶ 6. "[W]hen reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review." Last Will and Testament of Carney, 758 So.2d 1017, 1019 (Miss.2000)(quoting In re Estate of Homburg, 697 So.2d 1154, 1157 (Miss.1997)).
Typically this Court will not disturb a chancellor's findings of fact unless the chancellor was manifestly wrong and not supported by substantial evidence.... This rule does not apply to questions of law. When presented with a question of law, the manifest error/substantial evidence rule has no application and we conduct a de novo review.
Last Will and Testament of Carney, 758 So.2d at 1019(quoting In re Estate of Homburg, 697 So.2d 1154, 1157 (Miss. 1997)).
¶ 7. The contestant of the probated will has the burden of establishing the existence of a confidential relationship between the testator and the beneficiary. Norris v. Norris, 498 So.2d 809, 813 (Miss. 1986).
Factors in determining confidential relationship between testator and beneficiary include:(1) Whether one person has to be taken care of by others, (2) Whether one person maintains close relationship with another, (3) Whether one person is provided transportation and has their medical care provided for by another, (4) Whether one person maintains joint accounts with another, (5) Whether one is physically or mentally weak, (6) Whether one is of advanced age or poor health, and (7) Whether there exists power of attorney between one and another.
Estate of Dabney, 740 So.2d 915, 919 (¶ 12) (Miss.1999) (citations omitted). "Suspicious circumstances surrounding the creation of the will also raise the presumption of undue influence." Id. at 921.
¶ 8. It is clear that Donald and Mr. Sandlin had a confidential relationship. *854 Donald took care of his father. He cooked, cleaned, and shopped for his father. He helped feed and clean his father. Donald maintained a very close relationship with his father. He provided transportation for his father who was physically weak. He helped his father with Mr. Sandlin's medications. Donald also had a joint bank account and held his father's power of attorney. The combination of these factors amount to a confidential relationship between Donald and Mr. Sandlin.
¶ 9. Dan claims that because of this confidential relationship between the testator and the beneficiary, there is raised a presumption of undue influence. However, that is not necessarily the case.
A presumption of undue influence is not raised merely because a beneficiary occupies a confidential relationship with the testator; something more is required, such as active participation by the beneficiary in the procurement, preparation or execution of the will or mental infirmity of the testator. Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959). In other words, there must be some showing that [the beneficiary] abused the relationship either by asserting dominance over the testator or by substituting her intent for that of the [testator].
In re Will of Wasson, 562 So.2d 74, 78 (Miss.1990)(quoting In the Matter of Will of Adams, 529 So.2d 611, 615 (Miss. 1988))(see also Estate of Coleman, 738 So.2d 773, 776 (Miss.Ct.App.1999)).
¶ 10. Once established, the burden of proof is passed over to the beneficiary to show by clear and convincing evidence that the will is not the product of undue influence. Estate of Dabney, 740 So.2d at 921 (¶ 19)(citing Croft v. Alder, 237 Miss. 713, 115 So.2d 683, 686 (Miss. 1959)). To overcome this presumption, the proponent of the will must show (1) good faith on the part of the beneficiary, (2) the testator's full knowledge and deliberation of the consequences of his actions, and (3) that the testator received the advice of a competent person disconnected from the beneficiary. Estate of Dabney, 740 So.2d 915, 921 (¶ 19)(Miss.1999)(citing Murray v. Laird, 446 So.2d 575, 578 (Miss.1984)). Three years later our supreme court addressed this test again in Mullins v. Ratcliff, 515 So.2d 1183, 1194 (Miss.1987) by redefining the third prong as independent consent and action by the testator must be shown by clear and convincing evidence. The Mullins court also went on to state:
These prongs should not be understood as entirely separate and independent requirements that ought to be rigidly exacted in every case. Undue influence is a practical, non-technical conception, a common sense notion of human behavior. As helpful as Murray may be to identify factors that ought to be considered, common sense counsels against rigid, inflexible multi-part tests, particularly as the parties our law saddles with proof of the negatives are laymen, not legal technicians. Better that the scope of equitable principles be imperfectly defined than that justice be overborne by the weight of artificial rules.
Id.
¶ 11. In this case there was active participation by Donald in the procurement, preparation and execution of the will. Donald procured the will form, and he prepared it for his father. Donald acquired the notary public and the witnesses to the will. Donald was present in the hospital room when his father signed the will. All of these acts were done by Donald Sandlin, but the trial court was not convinced that they were not done in good faith. The court could find no evidence that Donald abused his confidential relationship with his father.
*855 ¶ 12. As to the testator's knowledge and deliberations of the consequences of his actions, witness after witness testified that Mr. Sandlin was not mentally infirmed. He was described by many as strong-willed, strong-headed and stubborn. Many testified that Mr. Sandlin did not do anything that he did not want to do. No one ever testified that Mr. Sandlin was not in control of his mental faculties. On the contrary, the testimony showed that up and until a week or two before his death, Mr. Sandlin was still writing checks and participating in nearly 46% of his personal care. There was even testimony as to his driving himself around with his oxygen tank, after he was advised not to drive. The notary, Mrs. Wilson, testified that she and Mr. Sandlin knew each other but had not seen each other in thirteen years. She said that before signing and notarizing the will they laughed, joked and reminisced about old times. She testified that Mr. Sandlin told her that he wanted to make this will. She read the will to him, and he indicated that he understood it. It was then signed, witnessed and notarized. There was some testimony as to Mr. Sandlin's depression, but not as an influence on his wanting a new will.
¶ 13. In addition, the third prong of independent consent and action was met. Mr. Sandlin told several people that he intended to make a new will. He discussed it with his friend, Mrs. Wilson, the notary public. A result of testimony regarding Mr. Sandlin's personality, the chancery court felt that there was an independent notion by him to have a new will drawn up. Testimony of repeated witnesses stated that Mr. Sandlin was strong-willed and that he did what he wanted to do.
¶ 14. In Dan's petition to set aside the 1998 death benefits card from Mr. Sandlin's employment, the argument was that the signature was not that of Mr. Sandlin. An employee from Emerson Electronic also testified that she was familiar with Mr. Sandlin's signature. Based on her familiarity with his signature, she testified that the signature on the beneficiary card was not Mr. Sandlin's. However, the trial court found insufficient evidence to sustain the petition and it was denied.
¶ 15. Judge Gillespie found that, while there was a confidential relationship between Donald and his father, there was no undue influence. He stated that he could not find "that the evidence in this case made it appear that Mr. Sandlin was overmastered or that he was controlled by his son" and the presumption of undue influence was overcome. He believed, based on the testimony that Donald had acted in good faith, that Mr. Sandlin had knowledge and was aware of the consequences of his actions and that Mr. Sandlin exhibited independent action and consent of the new will. As for the petition to set aside and cancel the beneficiary card, it was denied. The court found that there was not enough proof to set aside the beneficiary card.
¶ 16. Judge Gillespie viewed all of the evidence and listened to all of the witnesses. His ruling is supported by the law of this state. This Court affirms the Chancery Court of Lafayette County in holding that the appellee, Donald Sandlin, overcame the presumption of undue influence raised by virtue of the confidential relationship existing between Mr. Sandlin and himself.
¶ 17. THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, *856 BRIDGES, THOMAS, LEE AND CHANDLER, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.