961 So.2d 65 (2007)
Nancy WILLIAMS and Laura Williams, Appellants
v.
The ESTATE OF Janette Williams CHEEKS, Deceased, Linda Harper, Individually and as Executrix of the Estate of Janette Cheeks, Deceased, Appellees.
No. 2006-CA-01055-COA.
Court of Appeals of Mississippi.
July 24, 2007.
*66 Johnnie McDaniels, Jackson, Attorney for Appellants.
Jon Heath Powell, Greenwood, Christopher Lee Stokes, Jackson, Attorneys for Appellees.
Before LEE, P.J., IRVING and CHANDLER, JJ.
*67 LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Janette Williams Cheeks lived alone in San Francisco, California, where she was predominantly taken care of by her niece, Nancy Smith. After breaking her hip, Cheeks was cared for in California by a nurse hired by Smith. Cheeks moved to Jackson, Mississippi, in December 2000 and remained in Jackson until her death on July 23, 2003. When Cheeks moved to Mississippi, another niece, Linda Harper, was primarily responsible for assisting her with transportation and medical care. Cheeks was not married and had no children but was close to all her nieces and nephews.
¶ 2. Cheeks's last will and testament, dated September 1, 2000, was offered and admitted to probate on September 11, 2003. Linda Harper, one of Cheeks's nieces, was named executrix in the will. The will provided that her twenty-seven nieces and nephews were to each receive one percent, and Harper was to receive the remaining seventy-three percent of the total trust property. Another niece, Jannette Jackson, was to receive one dollar. During the probate of the will, Nancy Smith, petitioner in objection, and about twenty-five other nieces and nephews of Cheeks filed a petition in objection to the will alleging that Cheeks was unduly influenced by Harper in the making of her will.
¶ 3. A hearing was held on the petition in objection and, on May 22, 2006, the chancellor found the will to be valid. In her order, the chancellor held that while a confidential relationship existed between Harper and Cheeks, Harper overcame the presumption of undue influence by clear and convincing evidence. Nancy Williams and Laura Williams, nieces of Cheeks, now appeal to this Court asserting that the chancellor erred in finding that Harper overcame the presumption of undue influence.
¶ 4. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 5. A chancellor's findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous legal standard. Wright v. Roberts, 797 So.2d 992, 997(¶ 14) (Miss.2001). If the chancellor's findings are supported by substantial, credible evidence, this Court will not reverse. Id.; In re Estate of Grantham, 609 So.2d 1220, 1223 (Miss.1992).

DISCUSSION
I. WAS UNDUE INFLUENCE ASSERTED ON CHEEKS?
¶ 6. In their single issue on appeal, Nancy and Laura Williams argue that the chancellor erred in finding that Harper overcame the presumption of undue influence.
¶ 7. A presumption of undue influence exists where there is a bequest by a testator to one in a fiduciary relationship with the testator if the fiduciary has any involvement in the preparation of the will. Id. at 678(¶ 4). A presumption of undue influence is not raised, however, merely because a beneficiary occupies a confidential relationship with the testator. In re Estate of Sandlin v. Sandlin, 790 So.2d 850, 854(¶ 9) (Miss.Ct.App.2001). To overcome a presumption of undue influence, the beneficiary must show the following by clear and convincing evidence: (1) the beneficiaries acted in good faith; (2) the testator had full knowledge and deliberation in the execution; and (3) the testator must have exhibited independent consent and action. In re Will of Smith, 722 So.2d 606, 612(¶ 22) (Miss.1998).
*68 1. Did the chancellor err in finding that Harper acted in good faith?
¶ 8. The following five factors are to be used when determining if a beneficiary acted in good faith: (1) who initiated the procurement of a will; (2) where was the will executed and in whose presence; (3) what consideration was paid; (4) who paid the consideration; and (5) was there secrecy or openness in the execution? Id.
¶ 9. Harper testified that Cheeks called and asked her to help her find an attorney to prepare a will. Harper procured Martin Tierney, an attorney in San Fransisco, and he came to Cheeks's home on August 29, 2000. An in-home consultation was appropriate given Cheeks's hip injury. Tierney met with Cheeks alone in the dining room to discuss the will. Harper, her husband, and Cheeks's caretaker were present in the home and waited in the kitchen. Following the consultation in private, the attorney called Harper into the room to discuss the final requirements and information that was necessary to complete the will. Harper and Cheeks then compiled a list of Cheeks's nieces and nephews with the necessary information such as addresses and Social Security numbers for Tierney to include in the will. On September 1, 2000, Tierney returned to Cheeks's home with the completed will and trust. Cheeks reviewed and executed the documents which were witnessed by Tierney and Cheeks's caretaker. Tierney testified that it was his idea to prepare a revocable trust in order to avoid probate of the will in California. Tierney also testified that Cheeks was strong and independent and that it was her decision to have the will drafted by him. After reviewing the will, Cheeks paid Tierney $812 in cash.
¶ 10. The chancellor recognized that the most relevant factor in this case was the secrecy or openness of the execution of the will. The chancellor stated that the "execution of the will in Ms. Cheeks['s] home could arouse suspicion of secrecy." However, the chancellor found no undue influence or bad faith. The court pointed out that Cheeks and Harper called all Cheeks's nieces and nephews to obtain their names, addresses, and Social Security numbers for the purpose of completing the will. Harper testified that when the nieces and nephews were called they were told that the purpose of obtaining the information was to complete Cheeks's will.
¶ 11. Williams alleges that Harper did not act in good faith because Cheeks's other nieces or nephews were never made aware that she desired to draft a will. Williams also points to Harper's participation in the preparation of the will and her presence while the will was being executed. Williams also argues that Harper, who was allegedly shocked by the disposition in the will, should have objected to the execution of the will. Williams also alleges that Harper failed to submit clear and convincing evidence as to who paid Tierney.
¶ 12. While Harper had a confidential relationship with Cheeks and helped in the procurement of the will, Harper has shown by clear and convincing evidence that she did not abuse the relationship. We find that the chancellor did not abuse her discretion in finding that Harper acted in good faith.
2. Did the chancellor err in finding that Cheeks acted with knowledge and deliberation?
¶ 13. Williams asserts that the idea of drafting a will and trust was the idea of Harper and/or Tierney. She further asserts that Cheeks could not have acted with knowledge and deliberation because she only had a seventh grade education and did not solely handle her business affairs.
*69 ¶ 14. Witnesses, including the contestants, testified that Cheeks was strong-willed and independent. No one testified that she was not in control of her mental faculties. No evidence was presented that she was not aware of the value of her assets or that she did not understand who her natural inheritors were or the consequences of her distribution. Cheeks had three bank accounts. One account was held solely by Cheeks. One account was held jointly by Cheeks and Harper. Another account was held jointly by Cheeks, Harper, and a third person. Witnesses testified that Cheeks was a "business woman" and was not dependent on anyone to handle her finances. Smith, however, testified that she had been assisting Cheeks with her business affairs since 1986 and that Cheeks was not as "sharp" as others testified. Despite Smith's testimony that Cheeks was not independent, sufficient evidence was presented to the contrary to support the chancellor's finding that Cheeks acted with knowledge and deliberation. For example, no one objected when Cheeks sold land shortly before making the will or during the sale of her home which was put on the market the day after the will was made and sold about three months later.
¶ 15. No evidence exists in the record that it was anyone other than Cheeks's idea to prepare a will. Tierney admitted that Cheeks never specifically asked that a trust be created. Tierney explained the reason for the trust as follows, "it avoids probate in California. And my understanding was her major asset was her house. So if you have to go through probate, it takes a long time in California. If you have a living trust and you don't have any taxable estate, then you can do things rather  very expeditiously." He explained this to Cheeks, and she agreed to the creation of the trust.
¶ 16. Tierney testified that Cheeks wanted to leave each niece and nephew a portion of her property. Tierney told Cheeks to compile a list of the nieces and nephews with their addresses and Social Security numbers. Once the list was compiled and the will was complete, Tierney discussed it with Cheeks. Tierney testified in his deposition that he questioned Cheeks's decision to give one percent each to twenty-seven nieces and nephews. Tierney testified that he said to Cheeks, "This is not the usual way it's done. Are you sure this is the way you want the estate distributed?" Cheeks responded "yes," and Tierney did not question her further about the distribution. Tierney next questioned Cheeks's decision to give Jackson one dollar because Jannette Jackson was named after Jannette Cheeks. Cheeks affirmed her decision and said, "I'd like to be a fly on the wall" when Jackson hears about the distribution.
¶ 17. Regardless of the unusual distribution of the property, sufficient evidence was presented that Cheeks acted with knowledge and deliberation to support the chancellor's ruling.
3. Did the chancellor err in finding that the decedent acted with independent consent and action?
¶ 18. Several witnesses, including Cheeks's nieces and nephews testified that she was a strong-willed, independent woman. Williams argues that Tierney failed to explain the ramifications of the will and trust on her natural inheritors. Tierney stated that Cheeks read and understood the will and trust and expressed that it was what she wanted. He testified that she was competent and sharp. No evidence was presented that Cheeks had any mental handicaps that prevented her from acting independently.
*70 ¶ 19. After reviewing the record, we cannot find that chancellor abused her discretion in finding that Harper overcame the presumption of undue influence. Harper showed by clear and convincing evidence that she acted in good faith, that Cheeks had full knowledge and deliberation in the execution of the will, and that Cheeks exhibited independent consent and action.
¶ 20. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.