406 So.2d 31 (1981)
Mary Ruth Henry WESTON, George F. Henry, Jr. and Horace E. Henry
v.
ESTATE OF Joseph A. LAWLER, Deceased, et al.
No. 52933.
Supreme Court of Mississippi.
November 18, 1981.
Mark W. Prewitt, Vicksburg, Henry Lee Rodgers, Louisville, for appellants.
*32 Lake Tindall, Hunger & Thackston, Edwin W. Tindall, Frank S. Thackston, Jr., Greenville, for appellees.
Before ROBERTSON, P.J., and SUGG and LEE, JJ.
LEE, Justice, for the Court:
Mrs. Ruth Henry Weston, George F. Henry, Jr., and Horace E. Henry, sister and brothers by the half blood of J.A. Lawler, filed a will contest in the Chancery Court of Washington County, Honorable Nat W. Bullard, presiding, after an instrument dated November 20, 1979, purported to have been executed by J.A. Lawler, was admitted to probate. The contestants contended that the testator lacked the mental capacity to execute a will and that the instrument resulted from undue influence of the executor, Paul R. Horne, Jr., and beneficiaries under the purported will. The proponents denied the averments of the contestants' petition and the issues were tried before a jury on September 29 and 30, 1980. The proponents introduced the record of probate and rested. The contestants introduced evidence and, at the conclusion of that evidence, the trial court, on motion of the proponents, excluded same and directed a verdict in favor of the proponents. The contestants have appealed here from the judgment of the lower court.
The facts favorable to appellants indicate that in about 1974, J.A. Lawler fell twenty-five feet from a ladder while pruning a tree, suffered severe head injuries and was hospitalized for approximately two weeks. Subsequently, he experienced severe depression, memory lapses, and confusion. During 1976, Mr. Lawler was disoriented and confused. On May 24, 1976, he was examined by Dr. Robert Lee, who found that he was under stress and was suffering from reactive depression. Dr. Lee treated Mr. Lawler for hypertension and when he again saw him on July 6, 1976, his mental depression continued.
Dr. Lee examined Mr. Lawler on September 5, 1979, at the Delta Medical Center where he had been admitted for acute illnesses. Mr. Lawler was suffering from congestive heart failure, arteriosclerosis, uremia, and Parkinson's Disease. He was confused and disoriented and was placed in the intensive care unit. On September 12, 1979, Mr. Lawler suffered a cardiac arrest and was transferred to the coronary care unit. His physical condition stabilized and he was released from the hospital into the care of his primary physician on September 24, 1979. He was mentally confused at the time of his release but did have lucid intervals.
On November 20, 1979, Mr. Lawler executed the will instrument, which was filed for probate in this cause. He was admitted to the hospital again on December 14, 1979, and remained there until he died on February 7, 1980. According to Dr. Irving Feurst, a doctor of internal medicine and psychiatry, a witness for the contestants, he examined and studied the hospital records pertaining to the hospitalization and treatment of Mr. Lawler, and, in his opinion, Mr. Lawler was suffering from the mentioned illnesses, had sustained brain damage and, on November 20, 1979, was not mentally competent to understand the nature of business such as disposing of his property. He testified that, on November 20, 1979, Mr. Lawler was not competent to execute the will instrument involved here.
Mr. Lawler moved into the home of Paul R. Horne, Jr., in 1976. Residing there were the proponents, Paul R. Horne, Jr., Thyra Crosby Jackson, his mother-in-law and a first cousin of Mr. Lawler, Linda Jackson, second cousin of Mr. Lawler, and Almyra Jackson Horne, the wife of Paul R. Horne, Jr. The executor, Horne, testified that, during the first part of 1976, Mr. Lawler began living in the household with him and the persons above mentioned, and, during the latter part of 1976, Horne prepared a last will and testament, which was executed by Mr. Lawler. On November 20, 1979, the present will was executed by Mr. Lawler. Prior to that date, according to Horne, Mr. Lawler desired to change the will, and Horne contacted an attorney in Greenville, and gave him information as to how the will should be drawn. The instrument was *33 prepared without Mr. Lawler going to the attorney and discussing the will and its contents with him. When the instrument was signed by Mr. Lawler, Horne made the arrangements for the execution of same but excused himself from the room when the instrument was actually signed. In 1976, Horne also prepared a general power of attorney which was executed by Mr. Lawler, granting Horne full power to do any and all things pertaining to the property of Mr. Lawler. Horne admitted that he attended to the business of Mr. Lawler during the years he was living in the Horne household, including writing checks and advising him concerning business matters. The November 20, 1979, instrument also named Horne a trustee for the handling and disposition of the estate property. Horne testified that he occupied a trustee relationship with Mr. Lawler.

I.

Did the lower court err by applying the two-witnesses rule?
The appellants originated this action by filing a petition for will contest. The affidavits to the petition set forth that the matters stated therein were true and correct and that all other matters stated were true and correct to the best of their knowledge, information and belief. Answer under oath was not waived. The proponents answered the petition and made oath that the matters and things set forth in the answer were true and correct as therein stated and were based on personal knowledge and information. The basis of the chancellor's ruling, in the directed verdict for proponents was that the appellants did not waive answer under oath and failed to overcome the sworn answer. He applied the "two-witnesses rule" relying upon Fant v. Fant, 173 Miss. 472, 162 So. 159 (1935), which stated:
Was the bill here sworn to within the meaning of this statute? The oath required by the statute must be positive and on knowledge, not mere information and belief. "The object of that section is to entitle complainant to swear to his bill, and thus by putting his oath against that of defendant, to get clear of the rule requiring two witnesses, or one witness and corroborating circumstances, to overthrow an answer denying the allegations of the bill." Jacks v. Bridewell, 51 Miss. 881. The defendant must swear to his answer on knowledge and not on information and belief in order to obtain the benefit of the rule. Carpenter v. Edwards, 64 Miss. 595, 1 So. 764; Snell v. Fewell, 64 Miss. 655, 1 So. 908; Toulme v. Clark, 64 Miss. 471, 1 So. 624; Purvis v. Woodward, 78 Miss. 922, 29 So. 917; Stewart v. Coleman & Co., 120 Miss. 28, 81 So. 653. The same rule, of course, must apply to a complainant; there being nothing in the statute showing a contrary intention. (173 Miss. at 485-486, 162 So. at 161).
The Fant case may be distinguished from the case sub judice. There, the action was initiated by an original bill of complaint to cancel a deed and the case was heard on bill and answer. The controversy here involved matters testamentary and of administration. In Lindeman's Estate v. Herbert, 188 Miss. 842, 193 So. 790 (1940), the Court said:
Hence, even if Section 383 of the Code of 1930 [Section 11-5-33 Miss. Code 1972] had any application, the answers were entitled to be given "only such weight and credit as in view of the interest of the party making the same, and the other circumstances of the case, it may be fairly entitled to." However, in matters testamentary and of administration no answers under oath were required, whether waived or not. Section 370 of the Code of 1930. The chancery court in the matter of estates administered may hear and determine objections and exceptions, etc. without adherence to the strict rules of pleading. (188 Miss. at 854-855, 193 So. at 793.)
See Reedy v. Alexander, 202 Miss. 80, 30 So.2d 599 (1947).
*34 Mississippi Code Annotated section 11-5-49 (1972)[1] provides that in matters testamentary no oath shall be required to any petition and such petition shall not be taken as confessed because of the want of an answer, but every such petition shall be supported by the proper evidence.
Without discussing this contention further, or considering Mississippi Code Annotated section 11-5-33 (1972) which abolished the two-witnesses rule in all cases where the bill is sworn to by the complainant, we are of the opinion that the two-witnesses rule is not applicable here and that the chancellor erred in following the principle stated in Fant, supra.

II.

Did the lower court err in granting the motion for a directed verdict at the conclusion of the contestants' case?
The burden of proof is upon the proponents of a will to establish that it is the true and accurate last will of the testator. Such burden never shifts to the contestants, although the latter may have the burden of going forward with the proof. In McDowell v. Pennington, 394 So.2d 323 (Miss. 1981), the Court stated:
Where there is a confidential relationship such as exists here, a presumption arises that the proponent(s) of the will exercised undue influence over the testator and the proponent(s) must overcome that presumption by clear and convincing evidence. The confidential relationship must result in a dominant influence by the beneficiary over the testator. In Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), holding that Alder's will was a result of undue influence, the Court said:
"[W]here a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence." 237 Miss. at 722-723, 115 So.2d at 686. (394 So.2d at 325).
The facts in McDowell are similar to the facts of this case, although Pennington, the executor, was a beneficiary in the will. In the present case, the testator resided in the home of Horne, the executor, along with Horne's mother-in-law and wife, who were beneficiaries in Mr. Lawler's will. Horne held a general power of attorney over all Mr. Lawler's property, and he was a trustee under the will with authority to pay net income from the trust to his (Horne's) mother-in-law, Thyra Crosby Jackson, and, in the event she predeceased Mr. Lawler, then Horne, as trustee, was authorized to establish trusts in equal shares for his own wife and sister-in-law and to pay net income from the trusts to them.
Undue influence over a testator, while not exercised by a beneficiary under the will, may be done so through an agency or a third person. 94 C.J.S. Wills, § 235 at 1084 (1956); 79 Am.Jur.2d Wills § 394 at 553 (1975); Annot., 96 A.L.R. 613 (1935). We see no logical reason why, under the facts of this case, the confidential relationship existing between Horne and Mr. Lawler should not be extended to Horne's wife and mother-in-law, and, in our opinion, such facts require that the confidential relationship be so extended. Therefore, the proponents, in addition to having the burden of proving the instrument to be the true and accurate will of Mr. Lawler, also had the duty of meeting that burden by clear and convincing evidence.
The role of a jury in a will contest is the same as that in civil trials in a court of law and the same principles apply. Fowler v. Fisher, 353 So.2d 497 (Miss. 1977). When considering motions for directed verdicts, the trial judge must accept as true all facts and inferences arising therefrom in favor of the party against whom a motion is filed, disregard any evidence introduced by the opposite party in conflict therewith, *35 and, if such evidence will support a verdict for the party against whom it is filed, the trial judge must overrule such motion. Claiborne v. Greer, 354 So.2d 1109 (Miss. 1978), Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975). Under the facts of this case, we are of the opinion that the proof for the contestants raised a question for the jury to determine as to testamentary capacity and undue influence, that the issues should have been submitted to the jury and that the lower court erred in sustaining the motion for a directed verdict. The judgment of the lower court, therefore, is reversed and the case is remanded for a new trial on the merits.
Appellees have cross-appealed contending that the lower court erred in sustaining appellants' objections to the introduction into evidence of the sworn answers filed by appellees. In view of our decision on the direct appeal, the case is affirmed on cross-appeal.
REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] Same as Miss. Code Ann. § 1281 (1942).