# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CA-02029-SCT

*LARRY L. KIMBROUGH a/k/a LARRY KIMBROUGH, PATRICIA KIMBROUGH HAWTHORNE a/k/a PATRICIA HAWTHORNE, EFFIE KIMBROUGH GRAY AND KINNEY LEE MALONE a/k/a KENNY KIMBROUGH*

*v.*

*ESTATE OF DAVID "JUNIOR" KIMBROUGH, DECEASED, AND MILDRED WASHINGTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/07/2012 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| TRIAL COURT ATTORNEYS: | WILLIAM JAMES DUKES |
| | JAMES LAWTON ROBERTSON |
| | CARTER C. HITT |
| | GWENDOLYN BAPTIST-HEWLETT |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM JAMES DUKES |
| | JAMES LAWTON ROBERTSON |
| ATTORNEYS FOR APPELLEE: | CARTER C. HITT |
| | GWENDOLYN BAPTIST-HEWLETT |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 03/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     David "Junior" Kimbrough passed away on January 17, 1998, leaving his entire estate

to his long-time girlfriend, Mildred Washington.  Matthew Johnson was named executor of

the estate in Kimbrough's Last Will and Testament.  Johnson petitioned the court to probate

Kimbrough's will on May 21, 1998. The following day, the chancery clerk admitted the will for probate, appointed Johnson executor, and issued letters testamentary. Contestants filed to contest the will on August 18, 1998, and no other entries were filed during the next ten years. In September 2008, an entry of appearance was entered on behalf of four remaining contestants, which was followed by an entry of appearance on behalf of Johnson.

¶2. In May 2009, the chancery court denied Executor's Rule 41(b) motion to dismiss, granted Contestants' motion to compel discovery, granted Contestants' motion to remove executor, and appointed the chancery clerk of Marshall County as executor. Washington was issued a summons notifying her of the will contest. Johnson then filed his motion to dismiss alleging a violation of Mississippi Rule of Civil Procedure 4(h), because Washington was served process almost eleven years after the commencement of the action. Washington subsequently filed her motion for ratification and for support of the motion to dismiss. The trial court denied the motion to dismiss, but it granted a stay of the proceedings pending petition for interlocutory appeal to this Court, which we subsequently denied.

¶3. A trial on the matter was held in October 2012. After Contestants rested their case, Proponents (Estate of David "Junior" Kimbrough, deceased, and Mildred Washington) moved the trial court for dismissal, and the chancellor ultimately granted their motion and dismissed the case. Contestants now appeal to this Court on the following issues:

I. Whether Proponents made a *prima facie* case of a valid will;

II. Whether Contestants made a *prima facie* case that, before and on July 2, 1997, David "Junior" Kimbrough had a confidential, dependent and reliant relationship with Matthew A. Johnson;

2

III. Whether Contestants made a prima facie case of suspicious circumstances surrounding the purported Last Will of David "Junior" Kimbrough, deceased;

IV. Whether Contestants made a *prima facie* (and all but irrefutable) case of Matthew Johnson's conflicting interests and/or bad faith in procuring the purported Last Will of David "Junior" Kimbrough, in which Johnson was named executor, though Proponents bore the burden of proof on that issue by clear and convincing evidence;

V. Whether a will produced by the undue influence of another who acts in bad faith should be upheld, just because the wrongdoer is not a conventional beneficiary under the will, even though the wrongdoer does receive valuable benefits he could never have enjoyed without the will;

VI. Whether the trial judge erred when he granted Proponents' Mississippi Rule of Civil Procedure 41(b) motion to dismiss at the end of Contestants' case;

VII. Whether the trial judge erred when he relied on the testimony of Jennifer Kirk Sanders in granting Proponents' Rule 41(b) motion to dismiss, when she said nothing with Mississippi Rule of Evidence 401 Relevance to the outcome-determinative, confidential-relationship issue;

VIII. Whether the trial judge erred when he failed to hold that, by reason of Contestants' *prima facie* showing, a presumption of Matthew Johnson's undue influence in procuring the Last Will of David "Junior" Kimbrough arose, which required that the will be set aside unless Proponents produced clear and convincing evidence of (a) Johnson's good faith in procuring the Kimbrough will, (b) Junior Kimbrough's full knowledge and deliberation, and (c) Kimbrough's independent consent and action in making the will; and

IX. All subsidiary issues implicit in one or more of the foregoing issues.

¶4. After hearing oral argument on the matter, we will analyze the trial court's ruling based on the following:

**Whether the trial judge erred by granting Proponents' Mississippi Rule of Civil Procedure 41(b) motion to dismiss at the end of Contestants' case**.

3

## STATEMENT OF THE FACTS

¶5.    David "Junior" Kimbrough lived his life in Marshall County, Mississippi, where he learned to play the guitar at a young age and went on to open a juke joint.  Kimbrough's music added his own unique sound and style to the traditional rhythm of the blues.[1]  Right before his sixty-second birthday, Kimbrough signed a recording contract with Fat Possum Records.

¶6.    Matthew Johnson, the original executor of Kimbrough's will,  is associated with Fat Possum Records, Inc., and Mockingbird Blues Publishing, Ltd.  Johnson is a founding member, investor, and officer of these two companies, which are located in Oxford, Mississippi.  Over the next five years following Kimbrough's entering into the recording contract, he recorded albums with Fat Possum Reccords and signed publishing agreements with Mockingbird Blues Publishing.  The contracts made between Kimbrough and Mockingbird Blues Publishing effectively gave the publisher or any officer of the company power of attorney over his compositions.

¶7.    Kimbrough's health began to decline the year before his death as a result of being involved in an automobile accident.  That same year, Kimbrough met with Johnson and Bruce Watson, a manager and producer for Fat Possum Records.  At their meeting, Kimbrough signed three separate assignments of copyright and his last will and testament.

¶8.    At trial, testimony supported that Kimbrough could barely read or write, and that he was unable to read, or understand on his own, the contracts that he entered into.  Johnson

---

[1]www.fatpossum.com/artists/junior-kimbrough  (last visited March 19, 2014).

stated that he explained the contracts to Kimbrough before he signed them, but that Kimbrough never had an attorney present with him. Johnson also testified that Kimbrough relied on Johnson to be candid with him regarding their business dealings.

¶9.     Contestants presented testimony and arguments to support their contention that Kimbrough's relationship with Johnson qualified as a confidential relationship, and that Johnson used their confidential relationship to influence Kimbrough unduly in the signing of his last will and testament. The chancellor ultimately determined that Contestants had failed to meet their burden of proof to raise the presumption that Johnson had influenced Kimbrough unduly. Contestants now appeal the chancellor's grant of Proponents' Rule 41(b) motion to dismiss.

## STANDARD OF REVIEW

¶10.    The chancellor's findings regarding undue influence are findings of fact, and this Court will not interfere with those findings " . . . unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *Van Cleave v. Estate of Fairchild*, 950 So. 2d 1047, 1051 (Miss. Ct. App. 2007) (citing *Watkins v. Watkins*, 142 Miss. 210, 229, 106 So. 753, 755 (1926); *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (Miss. 2002)).

## ANALYSIS

**Whether the trial judge erred by granting Proponents' Mississippi Rule Civil Procedure 41(b) motion to dismiss at the end of Contestants' case**.

¶11.    As previously mentioned, Contestants argue that Johnson's and Kimbrough's relationship was confidential, and that Johnson took advantage of their relationship by

5

unduly influencing Kimbrough to leave his entire estate to Mildred Washington in his Last Will and Testatment. Contestants further argue that ample evidence was presented to raise a presumption of undue influence; therefore, the chancellor erred in not finding the same, and Proponents should have been required to prove by clear and convincing evidence that undue influence did not occur.

¶12.    *In re Estate of Laughter* defines a confidential relationship as " . . . between two people in which one person is in a position to exercise dominant influence upon the other because of the latter's dependency on the former arising either from weakness of mind or body, or through trust[.]" *In re Estate of Laughter*, 23 So. 3d 1055, 1063 (Miss. 2009) (quoting *Hendricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982)).  Further, this Court has identified the following seven factors to consider when determining whether a confidential relationship exists:

> (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.

*Laughter*, 23 So. 3d at 1063 (citing *In re Estate of Holmes*, 961 So. 2d 674, 680 (Miss. 2007) (citing *Wright v. Roberts*, 797 So. 2d 992, 998 (Miss. 2001))).

¶13.    If it is determined that a confidential relationship exists, an abuse of that relationship must be shown for the Contestants to raise a proper presumption of undue influence. *Costello v. Hall*, 506 So. 2d 293, 298 (Miss. 1987).  The existence of a confidential relationship, standing alone, does not raise a presumption of undue influence. *Laughter*, 23

6

So. 3d at 1064 (citing ***Wright***, 797 So. 2d at 999 (citing ***Croft v. Alder***, 237 Miss. 713, 723-24, 115 So. 2d 683, 686 (1959))); *see also **Matter of Will of Adams***, 529 So. 2d 611, 615 (Miss. 1988); ***Matter of Will of Wasson***, 562 So. 2d 74, 78 (Miss. 1990).

¶14.   The person who  allegedly is taking advantage of the confidential relationship " . . . must have used that relationship for his personal gain or to thwart the intent of the testator." ***Costello***, 506 So. 2d at 298 (citing ***Croft***, 237 Miss. at 723, 115 So. 2d at 686); *see **Barnett v. Barnett***, 155 Miss. 449, 457, 124 So. 498, 500 (1929) (undue influence over the execution of a will arises when the testator's will is replaced by the will of another); *and **Wasson***, 562 So. 2d at 79 (undue influence results in a will reflecting the beneficiary's wishes rather than the wishes of the testator); ***Matter of Will of Adams***, 529 So. 2d 611, 615 (Miss. 1988) (To effectively raise the presumption of undue influence, there must be a showing that the confidential relationship was abused through dominance over the testator or by replacement of the testator's intent for that of the beneficiary.).

¶15.   ***Laughter*** reaffirmed that a presumption of undue influence arises when the following circumstances are present:

> where the beneficiary has been actively concerned in some way with the preparation or execution of the will[;] or where the relationship is coupled with some suspicious circumstances, such as mental infirmity of the testator; or where the beneficiary in the confidential relation was active directly in preparing the will or procuring its execution, and obtained under it a substantial benefit.

***Laughter***, 23 So. 3d at 1064 (quoting ***Croft***, 237 Miss. at 723-24, 115 So. 2d at 686) (internal citations omitted)).

7

¶16. Commonly, undue influence is exerted by a person who is a named beneficiary in the will. However, this Court has extended the doctrine to nonbeneficiaries. The extension to nonbeneficiaries is seen in *Weston v. Lawler's Estate*, in which this Court stated, "Undue influence over a testator, while not exercised by a beneficiary under the will, may be done so through an agency or a third person." *Weston v. Lawler's Estate*, 406 So. 2d 31, 34 (Miss. 1981) (citations omitted); *see also Wasson*, 562 So. 2d at 79.

¶17. In *Weston*, the testator moved into the home of Horne, who subsequently was named the executor of the will, was granted a general power of attorney over the testator's property, and was named as trustee under the will. *Weston*, 406 So. 2d 31. Horne's wife and mother-in-law also lived in the home, and both women were named beneficiaries under the will. *Id*. At trial, the testator's physician testified that, at the time the testator executed his will, he was suffering from several illnesses and had sustained brain damage from a recent accident; thus he was not mentally competent when the will was executed. *Id*. at 32. This Court held that Horne, Horne's wife, and his mother-in-law all were in a confidential relationship with the testator, but that the jury should have made the determination as to testamentary capacity and undue influence; thus the case was remanded for a new trial. *Id*. at 34-35.

¶18. We find the case before us is distinguishable from *Weston*. *Weston*, 406 So. 2d 31. Although Kimbrough's health was declining, there is no indication whatsoever that he lacked mental capacity to understand the distribution of his estate. In fact, Contestants do not raise mental incapacity as an issue.

¶19. Comparing the present case to *Weston*, in which we extended the confidential-relationship and undue-influence doctrines to a nonbeneficiary, we find the facts of this case

8

do not support the existence of a confidential relationship between Kimbrough and Johnson. *Weston*, 406 So. 2d 31. In *Weston*, Horne had a general power of attorney over all of the testator's property, whereas here, Johnson had a power of attorney only over Kimbrough's compositions. *Weston*, 406 So. 2d at 34. Further, in *Weston*, Horne was a trustee under the will, giving him the power to pay net income from the trust to his mother-in-law, and if his mother-in-law predeceased the testator, Horne was to establish trusts in equal shares for his wife and sister-in-law. *Id*. In the present case, Johnson is responsible only for paying Washington royalties from Kimbrough's recording contract with Johnson's company.

¶20. Although Johnson facilitated the execution of Kimbrough's will, as did Horne in *Weston*, Johnson testified that, in hindsight, the company should not have been involved in helping any client with his or her will. Johnson also provided that he never accepted any compensation for serving as executor of the estate. *Weston*, 406 So. 2d 32-33. The chancellor determined that Johnson did not benefit from Washington receiving Kimbrough's entire estate. *See generally Laughter*, 23 So. 3d at 1064 (quoting *Croft*, 237 Miss. at 723-24, 115 So. 2d at 686). Also, only four children currently are contesting the will, which is only a small fraction of the supposed thirty-six children that Contestants allege Johnson was trying to avoid by convincing Kimbrough to leave his estate to Washington alone.

¶21. Contestants call attention to the chancellor's ruling that a confidential relationship did not exist between Kimbrough and Washington, which was never an issue to be decided. Even though the chancellor failed to rule explicitly on whether a confidential relationship existed between Kimbrough and Johnson, he did find that there was nothing for Johnson to gain by Kimbrough leaving his estate to Washington versus leaving his estate to his children.

9

Further, during the cross-examination of Johnson, the chancellor confirmed that he understood the issue before the court by stating,

> I realize that the relationship between him (Johnson) and Mr. Kimbrough, and for Mr. Kimbrough to get as far along as he got in his music career had to be a very bright man. Now, the question before this court is whether or not he fully understood what he had signed, or whether undue influence was used on him.

¶22. The chancellor also determined that the testimony overwhelmingly showed that Kimbrough "called his own shots." The chancellor went on to conclude that, even though Kimbrough was uneducated, he was not ignorant, and in fact, he was an extremely intelligent man. The chancellor pointed to the testimony revealing that, since Kimbrough could not read or write, all of his songs were performed from his memory alone. He further pointed to testimony providing that Kimbrough was hardheaded and did not let others pressure him. The chancellor ultimately decided that the Contestants hadid not meet their burden of proof, because their allegations were nothing more than "a lot of suspicions."

¶23. Lastly, it should be noted that, when reviewing a will contest, the polestar consideration is to carry out the intent of the testator. *Wasson*, 562 So. 2d at 79 (citing *Tinnin v. First United Bank of Mississippi*, 502 So. 2d 659, 667 (Miss. 1987)). During the chancellor's ruling, he discussed that Kimbrough had a child with Washington, that Washington was the last woman Kimbrough lived with, and that he was on her couch the day before he died. Testimony provided that Washington and Kimbrough had a relationship for many years. Washington is pictured on the inside cover of his last-released album. Johnson testified that when Kimbrough became ill, he was instructed to pay Washington any sums

10

owed to Kimbrough by his companies, because Washington was the person who took care of Kimbrough.

¶24. In respect to the chancellor's findings of fact, we find ample evidence in the record to support such findings. Further, the chancellor did not abuse his discretion or apply an erroneous legal standard; nor was he manifestly wrong or clearly erroneous in his determinations. Hence, we affirm the chancellor's ruling. *Van Cleave*, 950 So. 2d at 1051 (citing *Watkins*, 142 Miss. at 229, 106 So. at 755).

## CONCLUSION

¶25. The chancellor did not abuse his discretion in granting Proponents' Mississippi Rules Civil Procedure 41(b) motion to dismiss. Therefore, we affirm the decision of the chancery court.

¶26. **AFFIRMED**.

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. CHANDLER, J., NOT PARTICIPATING.**