# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01605-COA

**MARQUAN D. STOVER**                                                      **APPELLANT**

**v.**

**ELAINE G. DAVIS, EXECUTRIX OF THE**                         **APPELLEE**
**ESTATE OF TAMORA G. ROBINSON,**
**DECEASED**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2016 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MARQUAN D. STOVER (PRO SE) |
| ATTORNEY FOR APPELLEE: | JACK G. MOSS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 05/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.     This appeal arises out of a will contest. Marquan Stover, who is the great-nephew of the testator, Tamora Robinson, filed a motion to contest the second codicil to Robinson's last will and testament, alleging that it was the product of undue influence. After a hearing, the chancellor found no undue influence and dismissed Stover's motion.

¶2.     Aggrieved, Stover appeals, arguing: (1) a presumption of undue influence arose, and therefore, the chancellor erred by not shifting the burden of proof; and (2) the chancellor's decision was not supported by substantial credible evidence.

## STATEMENT OF FACTS

¶3.     Robinson passed away during October 2013. She was survived by her brother, Sylvester Griffin, her sister, Elaine Davis, and her great-nephew, Stover. Among those who predeceased her were her husband, Ernest Robinson, her sister, Clyda Myers, and her nephew, Richard Robinson. Testator Robinson never had any children. Prior to her death, Robinson executed three testamentary instruments drafted by her attorney, Jack Moss:[1] a last will and testament, signed on June 14, 1993; a codicil, signed on October 12, 2000; and a second codicil, signed on May 20, 2013. The second codicil is the subject of the instant appeal.

¶4.     The second codicil made two changes to Robinson's will and first codicil. First, it changed the disposition of real property originally devised to Robinson's nephew, Richard. Richard predeceased Robinson; therefore, the codicil made a new devise of the property to Davis. Second, it nominated Davis as executor, since the original nominee, Myers, had also predeceased Robinson under the circumstances.

¶5.     On October 28, 2013, the chancellor admitted Robinson's will and two codicils to probate and issued letters testamentary to Davis. On November 7, 2013, Stover, one of the devisees of the will, filed a motion to contest Robinson's second codicil, alleging it was made under undue influence. In his motion, Stover argued that Robinson was of weak health at the time she signed the second codicil, and that Davis, who served as Robinson's

---

[1] Moss began representing Robinson and her husband in the mid 1980s, shortly after he began practicing law.

conservator, exercised undue influence through her confidential relationship with Robinson.

¶6.     On October 3, 2016, the chancellor heard Stover's motion to contest Robinson's second codicil. During the hearing, the chancellor heard testimony from Stover, Davis, and Moss.

¶7.     Stover testified that the second codicil was contrary to Robinson's expressed desire that the property at issue remain with a Robinson relative.[2] In support of his claim that Robinson was unduly influenced, Stover testified that at the time Robinson executed the second codicil in 2013, she suffered from dementia and psychosis, and was recovering from a stroke she had experienced early that year. Stover stated that Robinson's health had been declining ever since her stroke, and that she required assistance to eat, bathe, and comb her hair. He described Robinson as forgetful and inappropriate. According to Stover, Robinson could not recall what date or year it was, and frequently yelled to the nursing home staff, "Can I l[ie] down?" when she was lying down already.

¶8.     Davis testified that Robinson was diagnosed with the beginning stages of dementia in March 2006. However, Davis said that she did not observe any signs that Robinson's dementia progressed to the point that Robinson did not know what she was doing. Davis stated that Robinson always recognized her, and asked how long she would be visiting and with whom she was staying. Davis said that when Robinson yelled to the nursing staff to lay her down, she would often be in her recliner, but wanted to be in bed. During other instances,

---

[2] Richard, the original devisee of the property at issue, was Ernest's brother's son.

Robinson would say, "I want to l[ie] down," despite already being in bed. Davis said that on those occasions, she would remind Robinson she was already in bed, and Robinson would respond, "Oh, okay."

¶9. Davis further testified that a conservatorship was established for Robinson in 2006, after Stover leased a car in Robinson's name,[3] and several credit cards were taken out in her name. At that time, Robinson resided in the Compere Nursing Home. Davis testified that to prevent any future occurrences from happening without Robinson's permission, Myers was appointed as Robinson's conservator. After Myers's death in October 2012, Davis replaced her as conservator.

¶10. Following Myers's death, Davis had the opportunity to discuss with Robinson what her intentions were regarding her estate. Davis said that she asked Robinson whom she wanted as her executor, and Robinson asked "Why can't you and Sherry[4] do it[?]" Davis responded, "Okay." Then, Davis reminded Robinson that Richard had passed too. Robinson said, "Oh, my goodness" and stated, "Well, then I need to change my will." Davis told Robinson, "Well, whenever you want to do it[,] let me know." When Davis asked Robinson about what she wanted to do about the property left to Richard, Robinson said she wanted to leave the property to Davis. Davis asked, "Are you sure?" and Robinson said, "Yes."

---

[3] Davis said Robinson received a call stating she owed approximately $3,500 on the car and was three months overdue on payments. Stover claimed Robinson consented to the lease.

[4] It appears from the record that Robinson was referring to her niece, Sherry Fletcher.

¶11.    Davis said that Robinson talked to her about her will several times. However, on one occasion, Davis reminded Robinson about her intention to change her will, and Robinson did not remember that she wanted to change it. Davis then told Robinson that she was going to call Moss to see if he was available to provide legal services. She proceeded to call Moss from her cell phone while she and Robinson were together.

¶12.    Moss testified that he received Davis's call, and asked to speak with Robinson. He said that Robinson recognized whom he was, and that he and Robinson spoke briefly about what she wanted to do with her will. Moss told Robinson that he wanted to meet with her rather than draft any changes over the phone. He then had a conference with Robinson in her room at the Compere Nursing Home, where he had the opportunity to speak with her alone. Moss testified that during the conference, he went through some general questions with Robinson to make sure she knew what she was doing and understood the changes she wanted to make to her will.

¶13.    Moss prepared the second codicil at his office and returned to the nursing home. He testified that he read over the codicil with Robinson and that she signed the codicil in the presence of two witnesses.[5] Moss testified that from his observation, Robinson's state of mind was good at the time she executed the second codicil. He stated that Robinson was physically weaker than she had been during his prior visits over the years, but that she was able to sit up in bed and write.

---

[5] Robinson signed the codicil in the presence of Moss and her brother, Griffin.

¶14. At the conclusion of the hearing, the chancellor found that Davis had made a prima facie case as to the validity of Robinson's will and two codicils. Further, the chancellor found that Stover had failed to meet his burden of persuasion, and the second codicil was not made under undue influence. However, the chancellor did not make a specific finding as to whether Robinson and Davis were in a confidential relationship, which is a necessary factor to determine whether a presumption of undue influence arose. On October 13, 2016, the chancellor entered a judgment dismissing Stover's motion to contest. Stover timely appeals, raising the following issues: (1) whether the chancellor erred by applying the wrong burden of proof; and (2) whether the chancellor's decision was supported by substantial credible evidence.

## STANDARD OF REVIEW

¶15. This Court will not disturb a chancellor's findings of fact "unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous legal standard." *Dent v. Roberts (In re Estate of Grantham)*, 609 So. 2d 1220, 1223 (Miss. 1992). Reversal is not warranted if the chancellor's findings are supported by substantial credible evidence. *Jacks v. Woods (In re Estate of Grubbs)*, 753 So. 2d 1043, 1046 (¶7) (Miss. 2000). "[W]here a chancellor does not make explicit findings, this Court on appeal will assume that all disputed issues were resolved in favor of the appellees. This is so even in cases where the chancellor's findings 'left much to be desired.'" *Ross v. Brasell*, 511 So. 2d 492, 495 (Miss. 1987). However, issues of law are reviewed de novo. *In re Estate of Hart*, 20 So. 3d 748, 752

6

(¶10) (Miss. Ct. App. 2009).

## DISCUSSION

### I.     Whether the chancellor erred by not shifting the burden of proof.

¶16.   In this issue, Stover makes two related arguments. First, he maintains that a presumption of undue influence arose due, in part, to the nature of Robinson and Davis's confidential relationship. Second, he argues that because the presumption arose, the chancellor erred in failing to shift the burden of proof to Davis to disprove any undue influence by clear and convincing evidence.

¶17.   "The proponent of a contested will bears the burden of proving its validity in all respects." *In re Estate of Pigg*, 877 So. 2d 406, 409 (¶8) (Miss. Ct. App. 2003). "A prima facie case of validity is made when the will and its record of probate are admitted into evidence." *Id.* The contestant then bears "the burden of going forward with evidence to challenge the will's validity." *Id.*

¶18.   In order to raise a presumption of undue influence, a contestant must show that: (1) a confidential relationship existed between the testator and a beneficiary, and (2) suspicious circumstances existed—such as the testator's mental infirmity—or the beneficiary in the confidential relationship was actively involved in some way with preparing or executing the will. *In re Last Will and Testament of Bowling*, 155 So. 3d 907, 910-11 (¶16) (Miss. Ct. App. 2014) (citing *Croft v. Alder*, 237 Miss. 713, 723-24, 115 So. 2d 683, 688 (1959)). "[O]nce the presumption of undue influence has been established, the burden of proof shifts to the

7

beneficiary to show by clear and convincing evidence that the gift was not the product of undue influence." *Wright v. Roberts*, 797 So. 2d 992, 998 (¶16) (Miss. 2001).

¶19.    We note that although the chancellor determined that Robinson's codicil was not the subject of undue influence, he did not explicitly determine whether a confidential relationship existed. Nor did he specifically address whether a presumption of undue influence arose. Therefore, in order to address Stover's assignment of error, it is necessary to first discuss whether a confidential relationship existed between Robinson and Davis. If there was a confidential relationship, a presumption of undue influence will arise only if suspicious circumstances existed, or if Davis was actively involved in the preparation or execution of Robinson's will.

#### a.    Confidential Relationship

¶20.    "A confidential relationship is present where one person is in a position to exercise dominant influence upon the other because of the latter's dependency on the former arising either from weakness of mind or body, or through trust." *Noblin v. Burgess*, 54 So. 3d 282, 288 (¶17) (Miss. Ct. App. 2010) (internal quotation marks omitted). The party seeking to establish a confidential relationship has the burden of proving such a relationship by clear and convincing evidence. *In re Estate of Pope*, 5 So. 3d 427, 432 (¶11) (Miss. Ct. App. 2008).

¶21.    The Mississippi Supreme Court has enumerated several factors to consider in determining whether a confidential relationship exists:

8

(1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.

*In re Estate of Dabney*, 740 So. 2d 915, 919 (¶12) (Miss. 1999).

¶22. Pursuant to the *Dabney* factors, testimony showed that Robinson resided in a nursing home and relied on nursing home staff to feed and bathe her, and comb her hair. Robinson maintained a close relationship with her sister, Davis, who visited Robinson roughly two or three times per month.[6] There was no evidence that Davis provided Robinson transportation or maintained joint accounts with Robinson. However, Davis served as Robinson's conservator at the time the second codicil was executed. The record shows Davis was appointed conservator sometime after Robinson's other sister Myers, who served as Robinson's initial conservator, passed away in October 2012. Prior to Myers's passing, Davis assisted Myers with conservatorship duties by attending nursing home meetings and helping with Robinson's expenses. Davis also tracked Robinson's nursing home fees and Medicare.

¶23. As far as mental and physical weaknesses, testimony indicated that Robinson had dementia, psychosis, diabetes, and hypertension. She was of advanced age and spent most of her time in bed. Prior to signing the second codicil in May 2013, Robinson suffered from a stroke, which may have contributed to a decline in her health. Davis did not have a power

---

[6] Davis lived in Baker, Louisiana at the time Robinson's will was probated.

of attorney.

¶24.    Given these circumstances, the chancellor could have found clear and convincing evidence that Robinson and Davis were in a confidential relationship at the time the second codicil was signed. The chancellor did not so find; therefore, we assume that the chancellor's ruling as to undue influence was not for Stover. However, rather than making our determination on the first prong of the test, we proceed to further discuss whether a presumption of undue influence arose.

b.    *Presumption of Undue Influence*

¶25.    The mere existence of a confidential relationship between a testator and beneficiary under her will does not raise a presumption of undue influence as to testamentary gifts.[7]

*Croft*, 237 Miss. at 723, 115 So. 2d at 686. Instead, the presumption will only arise

> where the beneficiary has been actively concerned in some way with the preparation or execution of the will, or where the relationship is coupled with some suspicious circumstances, such as mental infirmity of the testator; or where the beneficiary in the confidential relation was active directly in preparing the will or procuring its execution, and obtained under it a substantial benefit.

*Id.* at 723-24, 115 So. 2d at 686.

¶26.    Both Stover and Davis testified that Robinson had dementia and took medication for it. But the chancellor did not explicitly find that suspicious circumstances existed due to

---

[7] We note that a presumption of undue influence *does* arise with respect to inter vivos gifts once a confidential relationship is established. *Croft*, 237 Miss. at 723, 115 So. 2d at 686.

Robinson's mental infirmity. Therefore, we must assume the chancellor did not make such a finding, and that no presumption of undue influence arose. However, the chancellor did find that the second codicil was not a product of undue influence. We ultimately reach the same conclusion; therefore, we do not reach a finding on whether there was a confidential relationship along with suspicious circumstances.

<em>c.      Overcoming the Presumption of Undue Influence</em>

¶27.    Although we do not find that the chancellor erred by failing to address whether a presumption of undue influence arose, we hold that, based on the record and the chancellor's findings, if such presumption arose, Davis successfully rebutted it.

¶28.    To overcome a presumption of undue influence, a beneficiary must prove by clear and convincing evidence: "(1) good faith on the part of the [] beneficiary; (2) the [] testator's full knowledge and deliberation of [her] actions and their consequences; and (3) independent consent and action on the part of the [] testator." *Wright*, 797 So. 2d at 999 (¶23). In the instant case, the record contains sufficient evidence to satisfy each of these three prongs.

<em>1.      Good Faith</em>

¶29.    The supreme court has identified five factors to consider when determining whether a beneficiary used good faith: (1) "the identity of the initiating party in seeking the preparation of the instrument;" (2) "the place of the execution of the instrument and in whose presence;" (3) the consideration and fees paid, if any; (4) by whom they were paid; and (5) "the secrecy or openness of the execution of the instrument." *Murray v. Laird*, 446 So. 2d

11

575, 578 (Miss. 1984).

¶30.    Davis testified that she called Robinson's long-time attorney, Moss, in Robinson's presence after Robinson expressed that her will should be changed. Moss testified that he received Davis's call and he spoke with Robinson over the phone. Moss explained that he and Robinson talked briefly about the changes that Robinson wanted to make to her will. He then told Robinson that he would not make any changes over the phone; instead, he wanted to meet with her.

¶31.    Moss testified that following the phone call, he visited Robinson in her room at the Compere Nursing Home, where he had the opportunity to speak with her alone. Moss prepared the second codicil in accordance with Robinson's instructions at his office, and then returned to the Compere Nursing Home. He read the codicil to Robinson, and she signed it in the presence of her Griffin (her brother), and Moss, who acted as witnesses. Moss stated that Davis and her husband were also at the nursing home during this time, but he could not recall whether they were present in Robinson's room when the second codicil was executed. There was no evidence of the fee paid or who paid it. Nor was there any evidence suggesting the codicil was executed in secret.

¶32.    Under these circumstances, we conclude Davis proved by clear and convincing evidence that she acted in good faith.

### 2.    Knowledge and Deliberation

¶33.    In considering whether a testator acted with knowledge and deliberation, this Court

considers: (1) the testator's "awareness of [her] total assets and their general value," (2) the testator's understanding of "the persons who would be the natural objects of [her] bounty under the laws of descent and distribution or under a prior will and how the proposed change would legally affect that prior will or natural distribution," (3) "whether non-relative beneficiaries would be excluded or included and," (4) the testator's "knowledge of who controls [her] finances and business and by what method, and if controlled by another," how dependent the testator is on her and how susceptible she is to her influence. *Id.* at 579.

¶34. The chancellor found in his ruling that Moss had been doing legal work for Robinson for nearly forty years, and that Moss had taken "great pains to ensure that [Robinson] was in fact doing what she wanted to do." The chancellor noted Moss's testimony that Robinson "knew the objects of her bounty, [and] that she was not . . . under anyone's influence[,] in that these were in fact her wishes in the manner in which she changed her will by means of this codicil." The chancellor found the codicil's terms were logical because the only changes made involved the bequest of a piece of property that would have been given to a nephew who predeceased Robinson, and the appointment of an executor who also predeceased Robinson. We note that the codicil appointed Robinson's only surviving sister, Davis, to be Robinson's executor.

¶35. Although Davis served as Robinson's conservator and handled her finances and medical decisions, Davis explained that a conservatorship was initially set up for Robinson after Stover allegedly purchased a car in Robinson's name. There was insufficient evidence

13

regarding how susceptible Robinson was to Davis's influence. The inclusion or exclusion of non-relative beneficiaries was not at issue, as Stover was Robinson's nephew, and Davis was Robinson's sister. However, we note that Robinson's brother, Griffin, was in the room and witnessed the execution of the codicil.

¶36.    There was clear and convincing evidence that Robinson acted with knowledge and deliberation.

### 3.    *Independent Consent and Action*

¶37.    The third prong of the test to rebut the presumption of undue influence requires Davis to demonstrate, by clear and convincing evidence, that Robinson exhibited independent consent and action. The supreme court has held that the best way to show independent consent and action is to provide (1) "advice of a competent person," (2) "disconnected from the [beneficiary]," who is (3) wholly devoted to the testator's interests. *Id.*

¶38.    Robinson exhibited consent and action when she obtained independent advice from Moss, her long-time attorney, who was a competent person disconnected from Davis and wholly devoted to Robinson's interests. The record contained clear and convincing evidence of Robinson's independent action and consent.

¶39.    In sum, any presumption of undue influence as to Robinson's second codicil was overcome by clear and convincing evidence that Davis acted in good faith, Robinson had full knowledge and deliberation of the consequences of her actions, and Robinson exhibited independent consent and action when she executed the codicil. While the chancellor did not

specifically rule that Stover had the burden of persuasion, he correctly determined that the second codicil was not a product of undue influence. We note that a "chancellor will be affirmed where he reaches a correct result under the law and facts, though for a wrong reason." *Reed v. Weathers Refrigeration & Air Conditioning Inc.*, 759 So. 2d 521, 526 (¶17) (Miss. Ct. App. 2000) (quoting *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987)). Moreover, "if the judgment of [the] court can be sustained *for any reason*, it must be affirmed, and even though the trial judge based it upon the wrong legal reason." *Id.* (emphasis in original) (quoting *Patel v. Telerent Leasing Corp.*, 574 So. 2d 3, 6 (Miss. 1990)). Here, we find the chancellor reached the correct conclusion. This issue is without merit.

**II.     Whether the chancellor's ruling as to the second codicil was supported by substantial credible evidence.**

¶40.   In his second issue on appeal, Stover argues the chancellor's finding was not supported by substantial credible evidence. As discussed above, we find that the chancellor's decision was supported by substantial credible evidence. Accordingly, this issue is without merit.

**CONCLUSION**

¶41.   The chancellor neither made a ruling as to whether Robinson and Davis were in a confidential relationship, nor whether a presumption of undue influence arose as a result of suspicious circumstances. However, he did find that Robinson's second codicil was not a product of undue influence. We affirm the chancellor's judgment, finding that any potential

15

presumption of undue influence that arose was overcome by clear and convincing evidence that Davis acted in good faith, Robinson had full knowledge and deliberation of the consequences of her actions, and Robinson exhibited independent consent and action when she executed the codicil. Further, the chancellor's finding that Robinson's codicil was not made under undue influence was supported by substantial credible evidence.

¶42. **AFFIRMED.**

**LEE, C.J., BARNES AND CARLTON, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., FAIR AND TINDELL, JJ.; IRVING, P.J., AND WILSON, J., JOIN IN PART.**

**WESTBROOKS, J., DISSENTING:**

¶43. I am of the opinion that the evidence in this case could only support a finding of a confidential relationship, triggering a presumption of undue influence by Davis. As a result, I would find that the record contains sufficient evidence to support a finding that the presumption of undue influence was overcome by clear and convincing evidence—if such a finding had been made on the record, but it was not. After review of the record, a reasonable factfinder could go either way on whether the presumption was rebutted. However, I disagree with taking up the issue as one of first impression and making our own findings of fact. Sitting as an appellate court with only a cold record before us, we are without fact finding abilities, a power solely vested in the chancellor.

¶44. The chancellor failed to find a presumption of undue influence in Robinson's devise

16

of realty to Davis—her conservator. He placed the burden of proof on Stover, the contestant, when it should have been on Davis, and required clear and convincing evidence, not a preponderance of the evidence. "We cannot interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *In re Estate of Ladner*, 909 So. 2d 1051, 1054 (¶6) (Miss. 2004). I am of the opinion that the case should be remanded for the chancellor to make findings of fact as to whether the presumption of undue influence was rebutted by clear and convincing evidence. Furthermore, when the standard of proof is bifurcated, the chancellor should make each burden-shift clear in his findings of fact.

¶45.    In a will contest, who bears the burden of proof can be a complicated question. It is said that the proponents of the will bear the ultimate burden of proof, but that burden is initially met simply "by the offering and receipt into evidence of the will and the record of probate." *In re Estate of Edwards*, 520 So. 2d 1370, 1372-73 (Miss. 1988). Davis performed that duty. From there, "although the burden of proof remains on the proponents, the burden of going forward with proof of testamentary incapacity shifts to the contestants, who must overcome the prima facie case." *Id.* at 1373. If the contestant proves facts sufficient to raise a presumption of undue influence, the burden again shifts, this time back to the proponents to overcome that presumption by clear and convincing evidence. *See In re Bowling*, 155 So. 3d 907, 913 (¶33) (Miss. Ct. App. 2014). Stover overcame that prima facie case, so the burden again shifted.

17

¶46. The chancellor made no express finding as to whether the testatrix, Robinson, and the proponent of the codicil, Davis, were in a confidential relationship at the time the codicil was executed. However, Davis was Robinson's duly appointed conservator which put her in a confidential and fiduciary relationship. This Court has determined that this is a per se confidential relationship. *See In re Estate of Thomas*, 853 So. 2d 134, 135 (¶4) (Miss. Ct. App. 2003). Therefore, the presumption of undue influence arose "with regard to self-interested dealings between conservators and wards." *Id.* The plurality, however, assumes the chancellor found they were not, without agreeing or disagreeing with such a finding. But to find anything other than a confidential relationship would be manifestly erroneous.

¶47. The plurality is correct that, for testamentary gifts like the one at issue here, "the existence of a confidential relationship, standing alone, does not raise a presumption of undue influence." *Kimbrough v. Estate of Kimbrough*, 134 So. 3d 281, 285 (¶13) (Miss. 2014). "If it is determined that a confidential relationship exists, an abuse of that relationship must be shown for the [c]ontestants to raise a proper presumption of undue influence." *Id.* (citation omitted). The plurality then notes that the chancellor made no finding, and passes on this question. There unquestionably were "suspicious circumstances" here, given that the testatrix was suffering from dementia and was under the supervision and care of Davis as her conservator. But it was also uncontested that Davis was actively concerned in the preparation of the will; she testified she had repeatedly discussed the will with Robinson, had reminded Robinson of the death of named beneficiaries, and had been the one who initially

called her ward's attorney to set in motion the drafting and execution of the codicil. Davis was also present during Robinson's initial discussions with the attorney regarding the codicil, which occurred over Davis's cell phone.

¶48. Given these admitted and uncontested facts, the record can only support a finding of a presumption of undue influence. The burden would then have shifted to Davis to prove, by clear and convincing evidence, (1) her good faith, (2) Robinson's "full knowledge and deliberation of [her] actions and their consequences" and (3) Robinson's "independent consent and action." *Wright v. Roberts*, 797 So. 2d 992, 999 (¶23) (Miss. 2001). But the chancellor did not find a presumption of undue influence, and as a result he did not make any findings of fact on any of the three things Davis had to show by clear and convincing evidence to rebut the presumption. Instead, the chancellor placed the burden of proof, erroneously, on Stover, concluding: "So I just don't find that the Movant, having the burden of persuasion on the Court here today, has satisfied that."

¶49. Accordingly, I would remand the case to the chancery court for its reconsideration of the evidence and thereafter providing findings of facts and conclusions of law.

**GRIFFIS, P.J., FAIR AND TINDELL, JJ., JOIN THIS OPINION. IRVING, P.J., AND WILSON, J., JOIN THIS OPINION IN PART.**